## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **ANITA HARSHAW and** | : | |
| **KEVIN HARSHAW,** | : | **Bankruptcy No. 04-30366-MBM** |
| | : | |
| Debtors. | : | |

...................................................................:..................................................................

| | | |
|---|---|---|
| **United States Trustee,** | : | |
| Movant, | : | **Chapter 7** |
| | : | |
| v. | : | |
| | : | **Related to Doc. No. 47** |
| **Anita Harshaw and Kevin Harshaw,** | : | |
| Respondents. | : | |

Appearances:    Kathleen Robb, for the United States Trustee.
                Herbert A. Terrell, for Anita and Kevin Harshaw.

### <u>MEMORANDUM OPINION</u>

**AND NOW,** this **27th day** of **June, 2006**, upon consideration of

(a)    the motion by the United States Trustee (hereafter "the Trustee") to

dismiss the instant Chapter 7 bankruptcy case of Anita and Kevin

Harshaw, the above-captioned debtors (hereafter "the Debtors"), pursuant

to 11 U.S.C. § 707(b), which motion the Court has already granted by

Order of Court dated January 18, 2005, after a hearing that was held on

January 18, 2005;

(b)    the Memorandum Order entered on March 7, 2006, by the United States

District Court for the Western District of Pennsylvania, Judge Conti

(hereafter "the District Court"), with respect to an appeal by the Debtors of

this Court's January 18, 2005 Order of Court, wherein the District Court

remanded the matter before it to this Court "so that the parties may submit

evidence to th[is] ... [C]ourt and for th[is] ... [C]ourt to make findings [of

fact] and set forth conclusions of law;" and

(c)    the parties' stipulation of facts, as well as the parties' respective proposed

conclusions of law, regarding the Trustee's § 707(b) dismissal motion,

each of which were submitted to this Court subsequent to the District

Court's remand;

and for the reasons set forth below, **the Court enters findings of fact**

**and conclusions of law, also set forth herein, in support of its January 18,**

**2005 Order of Court.**

## I.

As an initial matter, the Court makes the following observations and/or

holds as follows with respect to those facts which are relevant to a disposition of

the Trustee's § 707(b) dismissal motion, which observations and holdings

support the Court's decision on January 18, 2005, to rule on the Trustee's

§ 707(b) dismissal motion without entering formal findings of fact and conclusions

of law:

(a)    The parties presently agree that an evidentiary hearing is unnecessary,

which is another way of saying that the parties presently do not dispute

those facts that are relevant to a disposition of the Trustee's § 707(b)

dismissal motion;

(b)    Furthermore, the parties presently stipulate as to such facts, *see*

Stipulated Proposed Findings of Fact of the United States Trustee and

2

Debtors, at ¶¶ 8 – 41 (hereafter "the Stipulation" and/or "Stipulation ¶ __");

(c)     Moreover, the facts which are so presently stipulated to are precisely

those facts which were asserted by the Trustee both in pleadings

submitted prior to, and at the hearing held on, January 18, 2005, which

factual assertions were never disputed at that time by the Debtors, *see*

Record of 1/18/05 Hearing (commenced @ 2:30:02 p.m.); and

(d)     Consequently, an evidentiary hearing was also unnecessary as of January

18, 2005.

In light of the foregoing, the Trustee's § 707(b) dismissal motion, as of

January 18, 2005, necessarily constituted a motion to be decided entirely on

questions of law.  Because, pursuant to Fed.R.Civ.P. 52(a), which rule is made

applicable to the instant matter,[1] "[f]indings of fact and conclusions of law are

unnecessary in determinations of motions decided on questions of law," Wooten

v. U.S. Department of Interior, 56 B.R. 227, 230 (W.D.La. 1985) (citing In re

Scrap Disposal, Inc., 15 B.R. 296, 297 (B.A.P. 9th Cir. 1981), for the foregoing

proposition, and holding as well that written legal conclusions can be dispensed

with because "[t]he district court should make an independent determination of

the legal issues involved[, that is because] ... the proper standard of review of the

issues of law is *de novo*"); *see also* Fed.R.Civ.P. 52(a), 28 U.S.C.A. (West 1992)

---

[1]Bankruptcy Rule 9014 governs, *inter alia*, a § 707(b) dismissal motion.
*See* Fed.R.Bankr.P. 1017(f)(1), 11 U.S.C.A. (West 2005).  Bankruptcy Rule 7052
applies to matters governed by Bankruptcy Rule 9014.  *See* Fed.R.Bankr.P.
9014(c), 11 U.S.C.A. (West 2005).  Bankruptcy Rule 7052 operates to make
Fed.R.Civ.P. 52 applicable to a proceeding.  *See* Fed.R.Bankr.P. 7052, 11
U.S.C.A. (West 2005).

(last sentence of Rule 52(a)) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in subdivision (c) of this rule," which latter subdivision is inapplicable to the instant matter); <u>Scrap Disposal</u>, 15 B.R. at 297 (interpreting Fed.R.Civ.P. 52 and holding as well that factual findings are necessary only if a motion requires a court to determine factual issues), and since, as just explained, the Trustee's § 707(b) dismissal motion, as of January 18, 2005, necessarily constituted a motion to be decided entirely on questions of law, the Court was warranted in ruling in the fashion that it did on January 18, 2005, that is in dispensing at that time with a written expression of formal factual findings and legal conclusions relevant to a dismissal of the Debtors' bankruptcy case via § 707(b).

However, the foregoing notwithstanding, because the District Court has remanded with specific instructions to this Court to enter formal findings of fact and conclusions of law,[2] the Court will do precisely that.  As for findings of fact, the Court finds as fact all of those facts to which the parties have now stipulated and which are set forth at Stipulation ¶¶ 8 – 45.  Furthermore, the Court enters as

---

[2]This Court observes that the Debtors are, at a minimum, partly responsible for what this Court perceives to be an arguably unnecessary remand of the instant matter by the District Court given that the Debtors actually advanced as an argument before the District Court on appeal that this Court erred by ruling on January 18, 2005, without the entry of formal findings of fact and conclusions of law.  By obtaining such remand the Debtors, for what now approaches nearly an additional year and a half, have essentially, this Court believes, improperly benefitted from the automatic stay of a bankruptcy case that should be dismissed.

4

conclusions of law those legal conclusions that it sets forth in the next section of the instant Memorandum Opinion.

**II.**

11 U.S.C. § 707(b) provides that:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C.A. § 707(b) (West 2004). The Debtors concede that their "scheduled liabilities are primarily consumer debts, as defined in 11 U.S.C. § 101(8)." Stipulation ¶ 16. Thus, the only issue regarding the applicability of § 707(b) to the Debtors' circumstances is whether this Court finds that their receipt of a Chapter 7 discharge from their unsecured debts – such debts total $114,611, *see* Stipulation ¶ 16 – would constitute "a substantial abuse" of the Chapter 7 bankruptcy process.

**A.    The Meaning of "Substantial Abuse" under § 707(b).**

Neither the U.S. Supreme Court nor the Third Circuit have ruled thus far as to the meaning of "substantial abuse" for purposes of § 707(b). Therefore, this Court is free, and it chooses to continue, to follow its prior holding on the

subject as set forth in In re Duncan, 201 B.R. 889, 893-95 (Bankr.W.D.Pa. 1996).

In Duncan the Court wrote as follows regarding the meaning of such

"substantial abuse":

> "Substantial abuse" is not defined either in § 707 or
>
> elsewhere in the Bankruptcy Code.  However, the legislative history
>
> seems to make clear that § 707(b) "was added to chapter 7 in
>
> response to concerns that some debtors who could pay their
>
> creditors might resort to chapter 7 to avoid their obligations."  4
>
> Collier on Bankruptcy, para. 707.04 at 707-15 (Bender 1996) (citing
>
> numerous floor statements of Congressmen at note 4); see also
>
> S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983), reprinted in
>
> Norton Bankruptcy Law and Practice 2d, 1995-96 Ed., at 711-12
>
> (The "Senate Report accompanying § 445, Omnibus Bankruptcy
>
> Improvements Act of 1983, which was a forerunner to the
>
> Bankruptcy Amendments Act of 1984," indicates that "if a debtor
>
> can meet his debts without difficulty as they come due, use of
>
> Chapter 7 would represent a substantial abuse").  Largely on the
>
> basis of such legislative history, courts have uniformly held that a
>
> debtor's ability to repay his debts or, more aptly, to fund a Chapter
>
> 13 plan is, at a minimum, a factor or circumstance that is indicative
>
> of whether "substantial abuse" would result from a discharge.  See,
>
> e.g., Kelley, 841 F.2d at 913; In re Walton, 866 F.2d 981, 985 (8th
>
> Cir. 1989); In re Krohn, 886 F.2d 123, 126 (6th Cir. 1988); In re

<u>Green</u>, 934 F.2d 568, 572 (4th Cir. 1991).  The only difference among the courts seems to be in the importance which they attach to a debtor's future ability to repay its dischargeable debts.  <u>Id.</u> However, this Court agrees with the court in <u>In re Vesnesky</u>, 115 B.R. 843 (Bankr.W.D.Pa. 1990), that "[a]ny difference between the courts seems to be a question of degree."  <u>Id.</u> at 848; *see also* <u>In re Ontiveros</u>, 198 B.R. 284, 288 note 7 (C.D.Ill. 1996) ("all three lines of authorities are not all that divergent").

The Eighth and Ninth Circuits have held that a finding that a debtor is able to repay his debts in the future, without more, is sufficient to dismiss that debtor's Chapter 7 case.  <u>Kelley</u>, 841 F.2d at 913; <u>Walton</u>, 866 F.2d at 985.  The Fourth Circuit has held that a debtor's future ability to repay his debts is but one of perhaps six or more factors that must be considered in addressing the substantial abuse issue, and that none of these factors by themselves may be dispositive of such issue.  <u>Green</u>, 934 F.2d at 572.  The other factors to be considered in what has been described as the "totality of the circumstances" test include:

(1)  Whether the [debtor's] bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment [on his part];

(2)  Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability

7

to repay;

   (3)  Whether the debtor's proposed family budget is

excessive or unreasonable;

   (4)  Whether the debtor's schedules and statement

of current income and expenses reasonably and

accurately reflect the true financial condition [of the

debtor]; and

   (5)  Whether the [debtor's] petition was filed in good

faith.

<u>Id.</u>

The Sixth Circuit has held that "[s]ubstantial abuse can be

predicated upon either [a] lack of honesty [by the debtor] or [a

debtor's] want of need [for a Chapter 7 discharge]," <u>Krohn</u>, 886

F.2d at 126, and that these two benchmarks necessitate a

consideration of, *inter alia*, all of the factors listed by the Fourth

Circuit in <u>Green</u>.  <u>Id.</u> at 126-27.  In particular, the Sixth Circuit

grouped factors for consideration as follows:

[F]actors that may be relevant to ascertaining a

debtor's honesty ... [include] the debtor's good faith

and candor in filing schedules and other documents,

whether he has engaged in 'eve of bankruptcy

purchases,' and whether he was forced into Chapter 7

by unforeseen or catastrophic events.  Among the

factors to be considered in deciding whether a debtor

is needy is his ability to repay his debts out of future

earnings. ...  Other factors relevant to need include

whether the debtor enjoys a stable source of future

income, whether he is eligible for adjustment of his

debts through Chapter 13 of the Bankruptcy Code,

whether there are state remedies with the potential to

ease his financial predicament, the degree of relief

obtainable through private negotiations, and whether

his expenses can be reduced significantly without

depriving him of adequate food, clothing, shelter and

other necessities.

Id.  The difference between the approach of the Sixth Circuit and

that of the Fourth Circuit, however, is that a finding that a debtor is

not in need of a Chapter 7 discharge (ie., that a debtor has the

ability to repay his debts out of his future income), by itself, may be

sufficient to warrant a dismissal.  Id. at 126.  Likewise, a finding that

the debtor has displayed a lack of honesty also may, by itself, result

in a dismissal of that debtor's case.  Id.  The Sixth Circuit's

approach thus represents a much more limited version of the

"totality of the circumstances" approach, Ontiveros, 198 B.R. at

288, and has been referred to by other courts and various

commentators as a "hybrid" approach that carves out a position

9

somewhere between the extremes of the Eighth and Ninth Circuits, on the one hand, and the Fourth Circuit, on the other.  Id. at 288-89.  Courts in the Seventh and Tenth Circuits have also recently dealt with the issue of "substantial abuse" under § 707(b).  *See, e.g.,* Ontiveros, 198 B.R. at 289 (adopting the Sixth Circuit's "hybrid" approach); In re Higuera, 199 B.R. 196, 198-201 (Bankr.W.D.Okla. 1996) (adopting the Fourth Circuit's "totality of the circumstances" approach).

This Court finds that the Sixth Circuit's "hybrid" approach is the most reflective of congressional intent as evidenced by the legislative history, and that it is also more equitable than the other two approaches.  *See also* Ontiveros, 198 B.R. at 291 ("The hybrid approach ... best resolves the tension between the conflicting policies of granting the debtor a fresh start while thwarting the abuse of consumer credit.").  *Therefore, this Court adopts the "hybrid" approach set forth in* Krohn.  The Court also views its adoption of the "hybrid" approach as consistent with the test set forth in Vesnesky, a decision also decided by a bankruptcy court in the Western District of Pennsylvania, wherein that court indicated that "[e]ven though the ability to pay [in the future] is the critical question, the court may use its discretion to recognize unique hardship."  Vesnesky, 115 B.R. at 848 (the Vesnesky court equates recognition of such hardship with the Fourth and Sixth Circuits'

10

consideration of certain of the numerous additional factors that they

list).

Duncan, 201 B.R. at 893-95 (emphasis added).  Because this Court adopts the

hybrid approach set forth in Krohn when assessing whether substantial abuse is

present, that a debtor is not in need of a Chapter 7 discharge (ie., that a debtor

has the ability to repay his or her debts out of his or her future income), by itself,

may, consistent with Krohn, be sufficient to warrant a dismissal.  Extending the

foregoing holding, the lack of a need by a debtor for a Chapter 7 discharge will

almost certainly suffice to warrant a dismissal if either (a) such debtor also lacks

some unique hardship, or (b) the lack of such need by such debtor is

pronounced, that is if such debtor has a considerable ability to repay some

portion of his or her debts.

**B.**    **Application of the Hybrid Approach to the Instant Case.**

For the reasons set forth below, the Court holds that (a) the Debtors lack

the need for a Chapter 7 discharge, (b) such lack of need on their part is

pronounced, and (c) they also lack some unique hardship.

The Court holds that the following factors, by themselves, establish that

the Debtors lack the need for a Chapter 7 discharge, and that such lack of need

is pronounced:

(a)    The Debtors have the ability to contribute at least $1,439.61 per month to

the satisfaction of their unsecured indebtedness given that they have at

least a like surplus of monthly income over monthly expenses, *see*

Stipulation ¶ 38;

11

(b)    The Debtors are eligible for adjustment of their debts through Chapter 13 of the Bankruptcy Code given that their unsecured debts total $114,611, *see* Stipulation ¶ 16, and their secured debts, according to the Debtors' Bankruptcy Schedule D, total $526,224,[3] *see* 11 U.S.C.A. § 109(e) (West 2005) (individuals are eligible for Chapter 13 relief if they owe, as of the petition filing date, unsecured debts of less than $307,675 and secured debts of less than $922,975);

(c)    The Debtors could repay through the Chapter 13 process (i) at least $51,825.96, or 45.2%, of their unsecured debts over 36 months, *see* Stipulation ¶ 39, or (ii) at least $86,376.60, or 75.4%, of their unsecured debts over 60 months, *see* Stipulation ¶ 40; and

(d)    The Debtors enjoy a stable source of future income, as reflected by the fact that (i) their joint gross income from employment for each of the years 2001, 2002, and 2003 ranged between $155,157 and $168,349, *see* Stipulation ¶ 13, (ii) their joint gross monthly salaries from employment in 2004 – i.e., at the time of the commencement of the instant case – equalled $15,207, which equates to $182,484 on an annual basis, *see* Stipulation ¶ 12, and (iii) Mrs. Harshaw "is employed as a physician by Allegheny Medical Practice, by whom she has been employed for 15 years, *see* Stipulation ¶ 10.

In holding as the Court does, the Court rejects as nonsensical, if not downright

---

[3]The Court can and does take judicial notice of the Debtors' bankruptcy schedules.

12

outrageous, the Debtors' position that the Court cannot, when conducting a

§ 707(b) substantial abuse analysis, consider, for purposes of assessing future

ability to repay debts, those savings that the Debtors have realized from their

own post-petition reductions in monthly expenditures, which savings appear to

equal $1,300.61 on a monthly basis, *see* Stipulation ¶¶ 25 – 28 & 37 (i.e.,

reduction in monthly vehicle and automobile insurance expense; reduction in

monthly unreimbursed job travel expense occurred as the result of a correction of

an overstatement by the Debtors in their Schedule J rather than some post-

petition action on their part).  The Court rejects such position of the Debtors

because, had the Debtors post-petition not undertaken themselves to reduce

such monthly expenditures (i.e., the cost of a fifth household vehicle and the

corresponding insurance), then the Court, for purposes of a § 707(b) analysis,

would have been legally compelled to reduce, and thus would have reduced, as

excessive and unreasonable such monthly expenditures.  *See* Duncan, 201 B.R.

at 894-96 (such reduction in monthly expenditures is called for not only in an

application of the hybrid approach set forth in Krohn but also when applying the

more lenient (from a debtor's perspective) totality of the circumstances approach

set forth in Green).  Because uniform case authorities establish that the Court

can consider, for purposes of a § 707(b) analysis, savings that the Debtors would

realize from such hypothetical cost reductions by the Court, the Debtors cannot

succeed in immunizing such cost reductions from a § 707(b) analysis by simply

undertaking to accomplish such reductions themselves post-petition;

consequently, instead of shielding such cost reductions from a § 707(b) analysis,

13

what such cost reductions by the Debtors serve to accomplish, from a § 707(b)

perspective, is to irrebuttably establish that such costs were unreasonable or

excessive in the first place.  Indeed, were the law otherwise, that is as the

Debtors would wish, then a bankruptcy debtor could easily subvert § 707(b) and

proceed to substantially abuse the Chapter 7 process.  What's more, that the

Court can, indeed is legally required to, undertake and then consider the results

of such hypothetical cost reduction when conducting a § 707(b) analysis

operates to render untenable the Debtors' companion argument that (a) they did

not possess, at the time of their Chapter 7 petition filing, any meaningful sum of

disposable income to pay creditors, (b) the filing of such bankruptcy petition

should thus automatically be viewed as having been filed in good faith, and (c)

presumably their bankruptcy case should thus automatically be viewed as one

that does not substantially abuse the Chapter 7 process.[4]

_____

[4]The Court presumes that, when the Debtors argue that the filing of their
bankruptcy petition should automatically be viewed as having been filed in good
faith, they likewise argue that their bankruptcy case should also automatically be
viewed as one that does not substantially abuse the Chapter 7 process, because
the Debtors appear to view as synonymous (a) a motion to dismiss a Chapter 7
case for cause on the basis of a bad faith bankruptcy petition filing, and (b) a
motion to dismiss a Chapter 7 case on the ground that it is substantially abusive
of the Chapter 7 process.  Unfortunately for the Debtors, the former of the two
aforesaid motions, which can only be brought under 11 U.S.C. § 707(a), is
anything but synonymous with the latter of such two motions, which is brought
exclusively under § 707(b) and is, at the most, only marginally concerned with
the good faith of a debtor (i.e., such good faith can constitute one of many factors
to be considered vis-a-vis substantial abuse).  The Court can only surmise that
the Debtors view such motions as synonymous, that is that the Debtors
essentially confuse the two, because (a) the Debtors, in all of their responses to
pleadings and memoranda of the Trustee, repeatedly cite to the decisions in In re
Zick, 931 F.2d 1124 (6th Cir. 1991), and In re Marks, 174 B.R. 37 (E.D.Pa.
1994), which two cases deal only with § 707(a) and not with § 707(b), and (b)

Furthermore, the Court holds that certain of the Debtors' expenses which have not yet been reduced could be reduced, and significantly, without depriving them and their lone 13-year-old daughter of adequate food, clothing, shelter and other necessities. In particular, the Debtors indicate, in their Bankruptcy Schedule J, that they pay $1,436 per month on their home mortgage (also the subject of Stipulation ¶ 23), $248 per month for electricity and heating fuel, and $400 per month for home maintenance (also the subject of Stipulation ¶ 33), all of which totals $2,084 per month. The Court holds that, for a family of three in the Pittsburgh area, significantly less – perhaps as much as $1,000 less – than $2,084 could be spent on a monthly basis for adequate shelter. As well, the Debtors own four vehicles, and that is after having relieved themselves of one additional vehicle subsequent to their bankruptcy petition filing. *See* Stipulation ¶ 25. However, only two members of the Debtors' household are able to drive. Therefore, the Court finds to be extravagant, entirely unnecessary, and ripe for adjustment (when ascertaining the Debtors' need for a Chapter 7 discharge) the Debtors' monthly vehicle expense of $1,704.39, *see* Stipulation ¶ 27; once again, the Court suspects that a reduction of as much as $1,000 per month with respect to such vehicle expense is called for. Finally, the Court summarily concludes that the Debtors' monthly expenditures of $472 for clothing, *see* Stipulation ¶ 34, and $250 for recreation and entertainment, *see* Stipulation ¶ 35, may be cut significantly without resulting in any relevant deprivation to either the Debtors or

---

neither the decisions in Zick or Marks nor § 707(a) otherwise bear any relevance to the Trustee's § 707(b) motion.

15

their daughter; between the two monthly expenditures, the Court envisions

monthly cutbacks totalling at least $300.  The foregoing potential for cuts in

monthly expenditures by the Debtors – the Court finds such potential to equal as

much as $2,300 per month in aggregate cuts (i.e., $1,000 + $1,000 + $300) –

further establishes that the Debtors lack the need for a Chapter 7 discharge, and

makes more pronounced such lack of need.

Finally, Mrs. Harshaw has $525 deducted from her monthly gross income

that is then contributed on her behalf to a "403B" retirement plan, *see* Stipulation

¶ 30,  which pension contribution by her is voluntary, *see* Stipulation ¶ 31.  The

Trustee contends, and the Court holds as well, that the entirety of such

contribution represents – not only for the purpose of a Chapter 13 analysis but

also for the purpose of determining whether a Chapter 7 case should be

dismissed as substantially abusive under § 707(b) – disposable income that must

be used by the Debtors to repay their creditors.  The Debtors disagree and argue

in opposition that (a) the Trustee relies for support primarily on the Third Circuit's

decision in In re Anes, 195 F.3d 177 (3rd Cir. 1999), wherein the Third Circuit

held, within the context of confirmation of a Chapter 13 plan, that "[v]oluntary

contributions to retirement plans ... are not reasonably necessary for a debtor's

maintenance or support," Anes, 195 F.3d at 180-81, and (b) Anes is entirely

distinguishable from, and thus irrelevant to, the Trustee's instant § 707(b)

dismissal motion on the ground that such latter motion is brought within the

16

context of a Chapter 7 rather than a Chapter 13 case.[5]  Unfortunately for the

Debtors, ample case authority, which case authority this Court agrees with, exists

for the proposition that – *specifically for the purpose of determining whether a*

*Chapter 7 case should be dismissed as substantially abusive under § 707(b)* –

voluntary retirement plan contributions are not reasonably necessary for a

debtor's maintenance or support, that is that such contributions constitute

disposable income that must be used by a debtor to repay his or her creditors.

*See, e.g.,* In re Behlke, 358 F.3d 429, 435-36 (6th Cir. 2004) (citing several

cases).  What's more, the Third Circuit's decision in Anes is cited by other courts

(a) for the immediately preceding proposition, that is that voluntary retirement

contributions are to be considered as disposable income to be used to repay

creditors for § 707(b) purposes, *see, e.g.,* Id., and (b) as being supportive of a

*per se* rule that voluntary retirement contributions are never to be considered as

reasonably necessary expenses of a debtor, that is that they are always to be

considered as disposable income of a debtor that can be used to repay creditors.

*See* In re Robbins, 333 B.R. 575, 578 & n.12 (Bankr.D.Mass. 2005) (pointing out

that the Third Circuit adopts such *per se* rule in Anes); In re King, 308 B.R. 522,

---

[5]The Debtors also feebly attempt to distinguish Anes from the instant
matter on the ground that Anes "concerned the propriety of repayment of funds
borrowed from a qualified 401(k) plan and not[, as in the instant matter,] monthly
contributions [to a similar type of plan]."  *See* Debtors' Proposed Conclusions of
Law, at p. 11.  Unfortunately for the Debtors, the Third Circuit in Anes held, in
particular, that, "[i]n effect, the payments[, that is the repayment of such borrowed
funds,] are contributions to the Debtors' retirement accounts."  Anes, 195 F.3d at
180-181.  Therefore, Anes is not distinguishable from the instant matter on such
ground advanced by the Debtors, that is Anes effectively concerned, as does the
instant matter, a monthly contribution by debtors to a retirement plan.

530 & n.11 (Bankr.D.Kan. 2004) (same). This Court (a) agrees that <u>Anes</u>

operates to establish such a *per se* rule within the § 707(b) dismissal context,[6]

and (b) is consequently bound to hold that, *per se*, the Debtors' $525 monthly

pension contribution must be considered, for purposes of the Trustee's § 707(b)

dismissal motion, as disposable income that must be used by the Debtors to

repay their creditors.[7] However, even if the Court were free to engage in a "facts

and circumstances" analysis regarding whether the Debtors' $525 monthly

pension contribution constitutes a reasonably necessary expenditure (i.e., an

amount not to be considered as disposable income to be used to repay

creditors), the Court would nevertheless hold that such expenditure is not so

reasonably necessary, that is that such expenditure must be considered as such

disposable income. The Court so holds because (a) such contribution by Mrs.

Harshaw is voluntary, (b) the Debtors are each only in their mid-forties, *see*

Stipulation ¶ 8, and (c) the Debtors have already amassed a $65,027.60

---

[6]The Debtors, at page 12 of their Proposed Conclusions of Law, appear to argue that the Third Circuit eschews a *per se* rule when considering whether voluntary retirement contributions are to be viewed as disposable income of a debtor that must be used to repay creditors. To the extent that the Debtors so argue, they are, given this and other courts' interpretation of <u>Anes</u>, sorely mistaken.

[7]The Court rejects outright the Debtors' ridiculous suggestion that the decisional holding of <u>Anes</u> may have been overruled by either (a) the U.S. Supreme Court's recent decision in <u>Yates v. Hendon</u>, 541 U.S. 1 (U.S. 2004), or (b) the Third Circuit's own decision in <u>Leckey v. Stefano</u>, 263 F.3d 267 (3rd Cir. 2001).

retirement account balance, *see* Stipulation ¶ 32.[8]  Of course, because such

$525 monthly amount must be considered as an amount that can be used to

repay creditors for purposes of the Trustee's § 707(b) motion, such availability of

such amount further establishes that the Debtors lack the need for a Chapter 7

discharge, and makes more pronounced such lack of need.

Combining the Debtors' stipulated monthly surplus of $1,439.61 – which

surplus by itself is, as explained above, sufficient for the Court to rule that the

Debtors lack the need for a Chapter 7 discharge, and that such lack of need is

pronounced – with the $2,300 of additional monthly savings on expenditures, as

set forth above, and the $525 additional disposable income that is presently

contributed by Mrs. Harshaw to her retirement plan, the Debtors actually have a

monthly surplus of $4,264.61 from which to satisfy some portion of their

unsecured indebtedness.  As it turns out, given such surplus, the Debtors could

repay through the Chapter 13 process (a) a whopping $153,525.96, or 134% of

their unsecured debts, that is all of their unsecured indebtedness and more, over

just 36 months, or (b) an even more exorbitant $255,876.60, or 223.3% of their

unsecured debts over 60 months.  In light of all of the foregoing, the Court holds

---

[8]The Court recognizes that the Debtors cite to <u>Patterson v. Shumate</u>, 504
U.S. 753 (U.S. 1992), for the proposition that "the corpus of Mrs. Harshaw['s]
monthly contributions are not includable as accessible wealth."  Unfortunately for
the Debtors, that the corpus of such contributions – i.e., the $65,027.60
retirement account balance – is apparently not accessible in bankruptcy by the
Chapter 7 trustee assigned to the instant case is irrelevant to the issue at hand,
that is whether future monthly contributions by Mrs. Harshaw to her retirement
account must be considered as an amount that can be used to repay creditors for
purposes of the Trustee's § 707(b) motion.

that the Debtors' lack of a need for a Chapter 7 discharge is so pronounced that,

when applying the hybrid approach set forth in Krohn, it matters not even

whether the Debtors are also experiencing some sort of unique hardship –

regardless of the presence of such hardship, granting Chapter 7 relief to the

Debtors would constitute a substantial abuse of the Chapter 7 process.[9]

Having so held, the Court also holds that, in any event, the Debtors cannot

point to any sort of unique hardship that could serve to overcome their

overwhelming ability to satisfy a significant portion of their unsecured

indebtedness in the relatively near future.  First, the Debtors do not even argue

that their Chapter 7 petition filing was prompted by some sudden illness,

calamity, or disability that was suffered by either themselves or their minor

daughter.  Second, the Court holds that, even if Mr. Harshaw experienced

extended periods of unemployment and fluctuating income pre-petition as is

argued by the Debtors, such circumstance nevertheless should not have

prompted a Chapter 7 petition filing given, as the Court holds above, the (a)

---

[9]The Court sees fit to devote nothing more than the instant scant footnote
to the argument pressed by the Debtors (at page 9 of their Proposed
Conclusions of Law and orally at the January 18, 2005 hearing), which argument
the Court views as only having been advanced halfheartedly, that, because they
filed their bankruptcy petition in Chapter 7 rather than under Chapter 13, and
since their future earnings thus could not constitute any part of their bankruptcy
estate were they permitted to proceed under Chapter 7, such future earnings
consequently cannot be considered when determining whether their bankruptcy
case is substantially abusive of the Chapter 7 process.  Quite simply, that future
earnings cannot constitute any part of a Chapter 7 bankruptcy estate is irrelevant
to the issue of what can be considered by a court when passing upon whether a
bankruptcy case can even be permitted to proceed under Chapter 7 in the first
place.

stability of the Debtors' overall household income, and (b) overwhelming ability of

the Debtors, as a household unit, to satisfy in the relatively near future their pre-

petition indebtedness.  Third, the Court questions whether, in fact doubts that,

the level of the Debtors' pre-petition expenditures is such that it could, as the

Debtors contend, be classified as having been far in excess of their ability to

repay, particularly given, as the Court holds above, the aforementioned ability of

the Debtors to henceforth pay for most, if not all, of such expenditures.  Finally,

that the level of the Debtors' pre-petition indebtedness may be double that of the

level of their assets – one of the Debtors' hallmark observations – says nothing

about their ability, or any hardship that they might experience when trying, to

repay such indebtedness.  Therefore, unique hardship suffered by the Debtors

and/or their dependent is simply nonexistent.

In fact, the only factors set forth in any of the cases that deal with § 707(b)

dismissal motions that, when applied to the Debtors' cause, might point in their

favor are that (a) the Debtors exhibited good faith and candor in filing schedules

and other documents, that is such schedules and documents reasonably and

accurately reflect the Debtors' true financial condition, and (b) the Debtors

refrained from engaging in any "eve of bankruptcy purchases."  However, and

unfortunately for the Debtors, the presence of such factors are far from sufficient

to tip the scale in favor of the Debtors under either (a) the hybrid approach set

forth in Krohn, which test is that which is adopted by this Court, or, for that

matter, even (b) the most lenient of tests as far as debtors are concerned, that is

the "totality of the circumstances" test set forth in Green.  Indeed, one of the

21

relevant factors reflective of the Debtors' honesty and integrity that the Debtors

contend must be placed under their column when assessing whether substantial

abuse exists is whether they filed their bankruptcy petition in good faith.

Unfortunately for the Debtors, the Court is anything but certain that even this

factor belongs under their column given that the Debtors' filing of such petition in

Chapter 7 is, as the Court holds, substantially abusive of the Chapter 7 process.

Therefore, and for all of the many reasons set forth above, the Court holds

that to grant Chapter 7 relief to the Debtors would constitute a substantial abuse

of the Chapter 7 process.  Accordingly, a granting of the Trustee's motion to

dismiss the Debtors' bankruptcy case pursuant to § 707(b) is, as it also was on

January 18, 2005, warranted.

**BY THE COURT**


   **/s/**                                
**M. BRUCE McCULLOUGH,**
**U.S. Bankruptcy Judge**

**DATED:       June 27, 2006**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **ANITA HARSHAW and** | : | |
| **KEVIN HARSHAW,** | : | **Bankruptcy No. 04-30366-MBM** |
| | : | |
| Debtors. | : | |
| .................................................................. | :.............................................................. | |
| **United States Trustee,** | : | |
| Movant, | : | **Chapter 7** |
| | : | |
| v. | : | |
| | : | **Related to Doc. No. 47** |
| **Anita Harshaw and Kevin Harshaw,** | : | |
| Respondents. | : | |

## ORDER OF COURT

**AND NOW,** this **27th day** of **June, 2006**, it is **hereby ORDERED, ADJUDGED, AND DECREED** that the Bankruptcy Clerk shall transmit the accompanying Memorandum Opinion of the same date to the United States District Court for the Western District of Pennsylvania, Judge Conti, which opinion contains those findings of fact and conclusions of law now entered by this Court in support of its earlier Order of Court dated January 18, 2005.


**BY THE COURT**


  **/s/**  _____
**M. BRUCE McCULLOUGH,**
**U.S. Bankruptcy Judge**

copies to:

Herbert A. Terrell, Esq.One Oxford Centre, Suite 4300

Pittsburgh, PA 15219

Kathleen Robb, Esq.
Office of the United States Trustee
Liberty Center, Suite 970
Pittsburgh, PA 15222

James A. Prostko, Esq.
Suite 660 U. S. Steel Bldg.
600 Grant Street
Pittsburgh, PA 15219